UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

**Appeal No. 22-1261**

# MAN AGAINST XTINCTION A/K/A "M.A.X." **FN1**

*Congressionally Authorized Citizen Prosecutor* **FN2**

v.

MASSACHUSETTS PORT AUTHORITY

*Whale Killing Appellee-Defendant*

_____

## CITIZEN PROSECUTOR'S REPLY BRIEF

_____

**29  December 2022**

---

[1] Man Against Xtinction is bringing the instant action pursuant to his authority to petition the Court provided to him by the Petition Clause of the First Amendment.

[2] Congress authorized me pursuant to 16 USC § 1540(g) to prosecute in the name of  the People of the United States  civil violations of the ESA § 9 take prohibitions.

**29 December 2022 M. A. X. Reply Brief Appeal No. 22-1261**  2



*Fig. 1: Very Large Ship & Right Whale Meeting in Mass. Bay Shipping Lanes*

PRELIMINARY STATEMENT

I commenced the underlying action to protect my personal and the Public's interests in the recovery and preservation of endangered species of whales that are resident species of Massachusetts coastal waters and recognized as resident species under the Massachusetts Endangered Species Act. Since the 1990's I have attempted to implement my own recovery program for the Northern Right Whale. This includes ongoing scientific research to establish the biological needs of this species population in order to increase its numbers by thriving in the Urban Sea of the US Atlantic coastline. I have personally spent thousands of dollars of treasure and thousands of hours of my time attempting to recover the Right Whale population from its endangered.

The underlying action is only about stopping one significant source for whales getting struck and killed by ships along the US coastline. That source is Massport as the proximate cause for whales getting struck by very large ships in the Gulf of Maine. If Massport was shut down, no very large ships as depicted above would ever again frequent Massachusetts waters and therefore would never be able to strike and kill any endangered whale again in the future. I obviously cannot achieve any success in recovering the Right Whale species from its endangered status if Massport and its business partners continue their historical practice of killing and injuring Right Whales incidental to their otherwise lawful business operations.

I maintain in my pleadings that the Northern Right Whales species is now facing inevitable extinction by 2040 solely as a result of anthropogenic induced mortality and adverse alteration of its marine environment including that by Massport and its business partners. The Right Whale population

**29 December 2022 M. A. X. Reply Brief Appeal No. 22-1261**                                    3

is primarily being decimated by generic vessel activity and commercial fishing in their coastal marine habitat in the Gulf of Maine. This includes very large ships ("VLS") which are used in the international cargo trade to as "container carriers" and "bulk carriers." The VLS are over 200 feet in length and are so large that only Massport has the port facilities large enough to dock VLS in the entirety of the Gulf of Maine.

The Appellee Massport is being prosecuted for its port operations being the proximate cause for VLS transiting the shipping lanes in Massachusetts Bay. Massport is "soliciting" in — violation of  the ESA's 16 USC 1538 (a and g) taking prohibitions — several international VLS operators to have these ships travel to Boston to dock at its port facilities. Massport has entered into contracts with these VLS operators to become its business partners in its part in their combined international cargo transportation business. These VLS operators only send their VLS to Boston to do business with Massport. If Massport ceased to allow their ship to dock, these VLS operators would stop having their VLS operate at all in the Gulf of Maine.

These VLS dock at Massport port facilities in Boston to unload its cargo and to have receive cargo to be shipped around the globe. Massport  provides these business partners with a full range of services including storage of cargo unloaded from the VLS  and cargo to be loaded onto the docked VLS.  When the VLS transit across Massachusetts Bay on the single set of available shipping lanes, the VLS have routinely in the past struck and killed ESA Listed Species of whales. These VLS also pollute Massachusetts Bay with noise and chemicals. This pollution also  adversely alter the Right Whales ESA designated critical habitat in the Gulf of Maine which in itself constitutes an ESA prohibited taking of this species by "harm." **FN3**

Massport is a "keystone" service provider for VLS operators in the international cargo trade ("ICT).  These VLS are so large they can only dock at Massport's port operations in Boston and nowhere else in the Gulf of Maine.  If Massport were to cease offering its port services to its VLS business partners, their very large cargo ships would stop  coming to Massachusetts Bay.

Whales likes the Right Whale and Humpback Whale  simply become more "roadkill" incidental to routine and categorical VLS movements along the US coastline and in Massachusetts Bay. The VLS

---

3 50 CFR § 17.3: *Harm* in the definition of "take" in the Act means an  act which actually kills or injures wildlife. Such  act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering.

coming to Massachusetts are only headed for one location, their contracted for porting at Massport's Boston port facilities.



*Fig. 2 The only shipping lanes in Massachusetts for VLS  Head Directly to Massport.*

The National Marine Fisheries Service ("NMFS"), the federal agency assigned supervisory authority to enforce the ESA and to protect ESA Listed Species of marine wildlife, has identified VLS and other coastal vessel traffic, including that of VLS, as a categorical activity that routinely kills and injures Right Whales incidental to otherwise lawful operations of ships by pilots.  NMFS has determined that VLS traffic is therefore responsible for the current decline of their numbers. NMFS publications cite many instances where VLS have routinely struck and killed whales incidental to their otherwise lawful operations. Individual pilot error or criminal conduct is not at issue. All VLS movements along the coastline are done in designated shipping lanes and at standardized speeds employed by all carriers.

The Court is mandated by Congress to independently enforce the take prohibitions of the ESA in the event that NMFS fails to do so. Founding father John Adams claimed that the Constitution shows that this is a nation "governed by laws and not men." If judges refuse to enforce the ESA when NMFS has failed to do so for political reasons, endangered species of whales will absolutely go extinct. Then the Constitution and the Public Interest is raped or broken, and the government descends into becoming an oligarchy of criminals serving political and vested interest ends.

The Court in 2022 **FN4**  and in its earlier 2008 adjudication **FN5** prematurely dismissed my ESA prosecution at the FRCP Rule 12 stage of the proceedings.  These dismissals were wholly unlawful and arbitrary. In both cases these judges (J. Casper & J. Tauro). deliberately ignored my pleadings allegations of fact and improperly based the dismissals on their own  "*sua sponte*" assumptions of fact, without evidence, that were in direct conflict with the factual allegations of my pleadings  (i. e. claiming that VLS operators are "independent actors").  They deliberately made these errors in order to justify their summary dismissal of my ESA prosecutions against Massport. These judges acted as "cowards" who deliberately "shot the messenger" rather than accept the responsibility of enforcing the ESA that would result in a shutdown of a billion dollars of commerce in Massachusetts.

My ESA claim in the underlying action asserts that vessel activity itself in Right Whale ESA designated critical habitat in the Gulf of Maine constitutes a *per se* ESA prohibited taking of ESA Listed Species of whales that are resident in that area. I am claiming that every VLS as it transits Massachusetts Bay is as equally likely to strike one of the resident endangered whales. I am not interested in the underlying action on any vessel collision with a whale by a vessel that is either deliberate or from extreme negligence.

I NEVER claimed in the pleadings or elsewhere in the underlying action that Massport could regulate vessel activity in Massachusetts Bay or seek any injunction based to compel its regulation of VLS speeds. I ONLY maintained as a fact that Massport was a keystone node for international trade to the US as the sole portal for VLS  to the coast of the Gulf of Maine. I maintain that if Massport cease operations, then VLS traffic would completely cease in the Gulf of Maine and that would stop the foreseeable threat of Right Whales being struck by these ships in the future. This is an incontrovertible result and adequate demonstrates both the redressability of my request for injunctive relief to the underlying court and the traceability of Massport as a proximate cause to VLS ships killing whales in Massachusetts Bay.

These presiding judges were intimidated by the political consequences to what they believed would be a very unpopular act interfering with international commerce. They were especially declined not to suffer such political rebuke at the request of a working-class man and pro se plaintiff. In 2008 the Northern Right Whale population was increasing. In 2022, its population is declining by 10 percent

---

4 *Strahan v. Mass. Port Authority*, 2022 WL 344560, 12 April 2022

5 *Strahan v. Massport*, 07-cv-12136-JLT (D. Mass 2007) 27 March 2008 Docket #25 Unpublished.

each year and it is facing inevitable extinction within a decade. This whale species imminent extinction will not be just from the consequence of fishers and shippers killing these whales. The greater blame falls on these federal judges who were too cowardly to enforce the ESA at the behest of a pro se plaintiff and more willing to violate their constitutional duties to serve the proprietary interests of the political party that put them in their black robes.

I clearly showed I met all three requirements for Article III standing in 2008 and in 2022. My "injury in fact" requirement was conceded to by both these courts. I showed "redressability" as explained above. If Massport was enjoined for allowing VLS to dock at Massport from January to May in any year, this will absolutely result in no VLS even attempting to transit the shipping lanes crossing Massachusetts Bay. This will eliminate a significant source of the threat of likely ship strikes on the resident whale populations in Massachusetts Bay. This showing of redressability in enjoining Massport also directly shows the source of my injury as fairly traceable to Massport.

If Massport was not soliciting business with VLS operators and operating in concert with them an international cargo transportation business, there would be no VLS crossing Massachusetts Bay and hitting Right Whales routinely. That's a "one-two punch" demo for proximate causality. Shutting down Massport to VLS dockings stops VLS from striking whales in the future. This also stands for Massport's being held accountable for its cargo movement business that incidentally causes the killing and injury of ESA Listed Species of whales.

The underlying court throws "salt in my wounds" in its violating my constitutionally protected right to petition federal courts by claiming in its 2022 Order of Dismissal that I am now barred by collateral estoppel, from any future ESA prosecutions of Massport no matter how many more whale deaths it racks-up in the future simply because the said 2008 dismissal. The 2008 ESA prosecution only for my failure to show Article III standing. As such the dismissal was without prejudice. Further the 2008 dismissal order never raise any statutory or other categorical criteria that would stop anyone including me from prosecuting Massport in the future to stop its causing VLS ships to strike and kill endangered whales.

The SCOTUS has ruled that residents of property around airports had standing to sue the airports regulatory authorities to stop the noise admitted by planes landing and taking off from its runways, **FN6** But Congress passing of statutes to have all aspects of airport operations regulated by

---

[6] *Airports Auth. v. Citizens for Noise Abatement*, 501 U.S. 252 (1991)

**29 December 2022 M. A. X. Reply Brief Appeal No. 22-1261**                                     7

federal agencies, also preempted the possibility of any private party getting an injunction from a court directed against an airport to stopping its activities to reduce noise pollution. **FN7**

==In First Circuit, dismissals for failing to show Article III standing are always done without prejudice==. As this Court has ruled previously, if a court has no Article III jurisdiction to hear a petitioner's claim from the outset then it must be dismissed as if "it never took place." *In re Evenflo Company, Inc., Marketing, Sales Practices*, 54 F. 4th 28 (1ˢᵗ Cir. 2022) **FN8**. Additionally the underlying court cited no statute or any other incontrovertible lawful restraint that barred me in 2008 or in 2022 from prosecuting my ESA claims against Massport. Later I appealed the 2008 dismissal but then settled my claims with Massport in which the 1ˢᵗ Circuit dismissed the appeal without prejudice. This would indicate further that the 2008 Dismissal cannot be used to prevent any attempt to prosecute Massport for future violations of the ESA in regard to its incidental killing of whales by its contracted business in docking of VLS.

Despite its dismissal in 2008, Judge Tauro considered my claims as admirable in his order of dismissal and recognized the NMFS' ongoing failure to enforce the ESA —

> "Plaintiff's cause is worthy, particularly his concerns about the federal government's inability or unwillingness to enforce its own environmental legislation. But he has not met the standing requirements of Article III of the United States Constitution"

The 2008 order of dismissal went completely unpublished. Obvious J, Tauro diid not want any finding of law or fact to serve as a precedent in any future possible ESA litigation against Massport or any other port on the USA coastline. This is further evidence that Tauro dismissed my lawsuit without any intent that his decision should prevent me from further ESA prosecutions against Massport.

### The Killing and Injuring of Endangered Whales by Massport's International Cargo Business

The Northern Right Whale is memorialized by the Massachusetts State Legislature as the official state marine mammal of Massachusetts. Northern Right Whales live in Massachusetts waters during all month of the year. They aggregate in large numbers, more than ¾ of their remaining population, in later winter and early spring through May. It is listed under the Massachusetts

---

[7] *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 62, 493 S.Ct. 1854 (1973).

[8] See also *Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1ˢᵗ Cir. 2016)

**29 December 2022 M. A. X. Reply Brief Appeal No. 22-1261**                                                                8

Endangered Species Acted as a critically endangered resident species of Massachusetts. **FN9** The Right

Whale is also listed as an endangered species under the Endangered Species Act ("ESA Listed

Species"). **FN10**

The National Marine Fisheries Service has designated most of the Gulf of Maine that includes

Massachusetts Bay & Cape Cod Bay as ESA designated critical habitat for the Northern Right Whale

("Right Whale Critical Habitat"). **FN11**



*Figure 3: Right Whale ESA Critical Habitat*

Northern Right Whales are being routinely killed and injured by being struck by vessels and by

being caught and entangled in pot and gillnet fishing gear along the US coastline. **FN12** The Defendant

---

9    321 CMR 10.00: Massachusetts Endangered Species Act. Retrieved on 28 December 2022 (https://www.mass.gov/regulations/321-CMR-1000-massachusetts-endangered-species-act#10-03-listing-of-species.)

10   https://www. .noaa.gov/species-directory/threatened-endangered fisheries

11   https://www.govinfo.gov/content/pkg/FR-2016-01-27/pdf/2016-01633.pdf

12   NMFS' "North Atlantic Right Whale: … Vessel strikes are another major threat to right whales. Their habitat and migration routes are close to major ports along the Atlantic coastline and often overlap with shipping lanes, making right whales vulnerable to collisions with vessels. These collisions can cause broken bones and massive internal injuries or cuts from propellers. Vessels of nearly any size can injure

**29 December 2022 M. A. X. Reply Brief Appeal No. 22-1261**                                    9

Massachusetts Port Authority operation of port facilities for use in international cargo trade ("ICT") is a keystone threat to the survival of the Northern Right Whale species. The International Cargo Trade relies on a network of both ships and ports to transport billions of tons of cargo across the globe on fixed and lawfully established routes.  The National Marine Fisheries Service has documented and identified ICT as an anthropogenic threat to large whales living along the US coastline. **FN13** It has documented many incidents occurring over decades to the current year where Very  Large Ships of ICT strike and kill whales whose species have been listed as endangered under the Endangered Species Act ("ESA Listed Species"). **FN14**   NMFS has adopted regulations adopting speed zones in Massachusetts Bay and along the Atlantic coastline to protect Northern Right Whales from being struck pursuant to generic VLS along the US coastline by establishing zones for reduced speeds for these vessels, as when they cross Massachusetts Bay to dock at Massport's port facilities in Boston MA. **FN15**

Any VLS attempting to dock in Boston between February – May  is likely to strike a Northern Right Whale either while heading towards Boston or after it leaves Boston to head back to the north-south shipping lanes along the US coastline. During February – May of each year Right Whales aggregate in  Massachusetts Bay within the boundaries of the Right Whale's designated Critical Habitat and within the area transited by the shipping lanes that VLS uses.  Over half of the remaining Right Whale population arrive during these months and will remain in Massachusetts Bay through the month of May and some years into June.

---

or kill a right whale. The faster a vessel is traveling when it hits a whale, the higher the likelihood of serious injury or death." Retrieved on 25 December 2022 from https://www.fisheries.noaa.gov/species/north-atlantic-right-whale.

[13] NMFS "Understanding Vessel Strikes" Retrieved on 25 December 2022 from (https://www.fisheries.noaa.gov/insight/understanding-vessel-strikes).

[14] ESA Listed Species of Whales includes Northern Right Whales, Sei Whales, Fin Whales & Blue Whales.

[15] NMFS' "Reducing Vessel Strikes to North Atlantic Right Whales North Atlantic right whale vessel speed restrictions reduce the likelihood of lethal collisions between vessels and these endangered whales." Retrieved on 25 December 2022 from (https://www.fisheries.noaa.gov/national/endangered-species-conservation/reducing-vessel-strikes-north-atlantic-right-whales.)"



*Fig. 1: NMFS Voluntary Speed Zones for Very Large Ship*

Whales get struck by VLS which are lawfully transiting the coastline in established shipping lanes. Most VLS travel at similar speeds that are usually held very constant for most of their passage. Whales get struck by these ships simply because they are swimming across or along the shipping lanes. The VLS' crew members seldom see the whales that the VLS strike, especially at night and when Beaufort Sea states of above three.  It is simply a statistical reality that so many whales per year will probably get struck and killed by ships where the vast majority of these strikes will go unreported and many occurring without any of the VLS' crews being aware that a whale was struck and killed by their ship. Sometimes, a VLS will dock at a port and a dead whale will be seen pinned to the VLS' bow.

The causative nexus that represents the core threat to the Right Whale is Massport's docking facilities. If Massport was shut down, then no VLS will even attempt to cross the shipping lanes that transit through Massachusetts Bay. There is not docking facility in the Gulf of Maine that is cable to handle any VLS or provide it docking services. The VLS is simply too large to use any other port in the Gulf of Maine except for Massport's docking facility. Every V|LS that would use Massport docking facilities will have to reroute itself to the port facilities available to them in New York or in New Jersey.

The original underlying action seeks  a permanent injunction VLS to enjoin Massport from allowing VLS to dock at its Boston port facilities from at least February – May each year. The incontrovertible impact of the injunction will be the immediate prevention of any Right Whale in Massachusetts Bay being struck by a VLS going to or coming from Massport. There will be no VLS crossing Massachusetts Bay after the injunction because VLS will not be able to dock at Massport.

The Amended Complaint that the underlying court wrongly rejected goes further. It adds three VLS operators that Massport has exclusively contracted to do International Cargo Trade business with and to serve as a vital porting node in these VLS Operators ICT business.    The Amended Complaint also seeks to VLS Operators along with Massport as Defendants to apply for and obtain an ESA Section 10 Incidental Take Permit ("ESA-ITP") from the National Marine Fisheries Service . Only an ESA-ITP can lawfully authorize Massport & the VLS operators to conduct their ICT business from February – May in the future concomitant to their willingness to adopt conservation measures that will insure that the VLS can cross Massachusetts Bay in a manner that is completely safe for all ESA Listed Species of whales and will reasonable prevent another endangered whale being struck by one of the VLS attempting to use Massport's docking facilities.  This means that the Appellee Massport must adopt and fund a habitat conservation plan that would have it mitigate and eliminate the threat of any of the VLS  used in its ITC business from striking a whale and polluting the Right Whale Critical Habitat.

My Amended Complaint also brings claims that the VLS are polluting Right Whale Critical Habitat with noise and chemical pollution. This pollution caused by Massport and three added VLS operator defendants constitutes a prohibited taking of ESA Listed Species of whales pursuant to the ESA § 9(a and g).

Once again, ANY one of the many VLS that frequent Massport is likely to strike and kill a Right Whale or any other member of an ESA Listed Species of whale. All of these potential strikes are incidental to the otherwise lawful conduct of VLS and their operators. None of the historical strikes of a Right Whale by a VLS was intentionally done by a rogue pilot. VLS whale strikes are simply a symptom and likely occurrence by anyone of the VLS operating in the shipping lanes crossing Massachusetts Bay. All VLS pollute Massachusetts Bay with noise and chemical pollution that itself will likely kill, impair the birth and/or prevents the feeding of any number of ESA Listed Species of whales.

At the FRCP Rule 12 stage of the proceedings, a district court must accept as true all factual allegations made within a plaintiff's petition. It is not allowed to assume any contrary factual allegations. The underlying court did the exact opposite. It made up factual allegations about ship operations and why they strike endangered whales that I not only never made in my complaint but also were in conflict with  the factual  allegations of my complaint. It wrongly assumed that most ships operating correctly and lawfully never strike whales.  It also wrongly assumed that only a few ships possessed a likelihood of striking a whale based only on pilot error or unlawful conduct by a pilot.

**29 December 2022 M. A. X. Reply Brief Appeal No. 22-1261**                              12

ARGUMENT

I.    THE DISTRICT COURT VIOLATED MY FIRST AMEENDMENT RIGHT TO PETITION THE COURT BY REFUSING FROM THE START TO ADJUDICATE MY ENDANGERED SPECIES ACT CLAIMS ON THE MERITS AGAINST MASSPORT.

   A.    It is incontrovertible that I do have ARTICLE III standing at the FRCP Rule 12 stage to survive a challenge by the Appellee-defendant according to SCOTUS —

> "The clinics have standing to bring their claim. Since their complaint was dismissed at the pleading stage, the complaint must be sustained if relief could be granted under any set of facts that could be proved consistent with the allegations." **FN16**

   i.    I was determined by the underlying court to have suffered injury in fact.

   ii.    My sought for injunctive relief redresses my injury and will prevent it in the future.

I am claiming that ALL Very Large Ships possess the same probable likelihood to strike a Right Whale or any other resident whale of Massachusetts Bay. These VLS in 2022 are largely operated by computers and travel in established narrow shipping lanes along the US coastline and across Massachusetts Bay. They all travel at a pre-programmed rate of speed as do subway trains on their tracks. Whales get struck when they choose to swim into the shipping lanes and then dwell there for a time. Whales hit by ships are analogous to "roadkill." NMFS has never issued a single citation to any ship operator who has struck a whale. NMFS considers these collisions as mere accidents.

NMFS in describing why vessels hits whales also has determined that ship strikes are an inevitable result of an accidental co-occurrence in the same spot by a whale and a ship. Vessel activity in a whale's marine environment invariably results in whales being adversely impacted by these vessels. The vessels otherwise lawful activity results in incidental disruption and harassment of the whales. Vessels routinely collide with these whales and many operators claim that they never saw the whale before the collision. Vessels introduce noise and chemical pollution inti the whale's marine environment.

Such random, repeated and persistent incidental taking of ESA Listed Species by industrial and other anthropogenic activity is common and has been subject to numerous lawsuits. Feral goats feeding is destroying  endangered bird species habitat. Bears on railroad tracks getting struck by trains. Bats

---

[16] *National Organization For Women, Inc., V. Scheidler et a*l, 510 U.S. 249 (1994)

flying into commercial windmills and getting killed. Road construction causing incidental habitat destruction for endangered cranes.

My pleadings make the factual allegation that *EVERY VLS DOCKING AT MASSPORT PORT FACILITIES face an **equally likely** chance of striking and killing a Right Whale or other ESA Listed Species of Whale while crossing Massachusetts Bay to or in its leaving to returning to the shipping lanes running north-south on the US Atlantic coastline.*

THERFORE, shutting down Massport facilities to VLS ships will immediately result in no further VLS ships will transit across Massachusetts Bay on the shipping lanes since the only reason they do so is for the singular purpose of docking at Massport' docks. Whale's in Massachusetts Bay with then after face no threat from being struck by VLS no will the Right Whale's ESA Critical Habitat be subject to the noise and chemical pollution produced by VLS when they transit across Massachusetts Bay.

iii.    My injuries are fairly traceable to Massport's' international transportation of cargo in concert with its contracted VLS operator business partners.

Clearly redressability begets traceability. THEREFORE, because the Court enjoining Massport from having VLS docking at its facilities will immediately cure the future likelihood of its injuring me further — of endangered whales being incidentally taken and hit by the VLS of its international cargo trade business — then it is incontrovertibly that the killing of whales by VLS is traceable to Massport and its business activities with the VLS operators.

B.    The underlying court (J. Casper) at the outset was determined to dismiss the underlying action regardless of its merits owing to its bigotry towards me as a working class *pro se* petitioner and my requested relief was politically and socially unacceptable to its vested interests outside the courtroom.

a.    Invented its own set of facts, it described the vessels as "independent operators" while my pleadings maintained that ALL VLS as part of the same industrial activity has each the same probability of likely striking a Northern Right Whale in Massachusetts Bay AND that Massport is acting in concert with VLS operators to run a international cargo shipment business that incidentally hits and kills endangered whales along with pollution their marine environment/

b.    It maintained without foundation that I was claiming that Massport had regulatory authority over ships and justified its dismissal on this one single and untrue premise.

    c.       Failed to enforce SCOTUS standards for treating pro se plaintiff allegation of fact and sought for relief.

    d.       Should have been still ruled on my Request for Declaratory Judgement & other alternative relief. It claimed that I never

II.       THE DISTRICT COURT'S DISMISSAL OF MY ENDANGERED SPECIES ACT CLAIMS AT THE MERE PLEADING STAGE SHOULD BE REVERSED.

a.       *My ESA Section 9 claims against Massport are meritorious and not frivolous at the Rule 12 Stage of the proceedings.*

I should be allowed to pursue discovery and then move for summary judgment. Clearly my factual; claim that Massport contractual business relations with certain VLS operators was deliberately solicited by Massport and they would not be traveling to Boston absent this solicitation and historical begging. Massport essentially sells "permits" to VLS operations to dock and use its port facilities in Boston. This alone provides proximate causation for Massport contributing to VL:S posing a threat to endangered whales. Massport does not allow any VLS to park at its piers in Boston. Only select VLS carriers obtain a contract to use its port facilities and that means much more involvement with Massport including paying for warehouse facilities and transportation hub costs.

Essentially Massport and the VLS operators are intimately connected and cooperative business partner that together run an international cargo business in the northeastern US coastline. The underlying court knows nothing about Massport except what I told it in the pleadings. At the Rule 12 stage it is required to consider every factual possibility that could justify my factual allegations against it and not simply claim there is none because it is not currently in the record. Discovery is needed and deserved before the court weighs in on the question of proximate cause in a judgment.

Issues of proximate cause should not be determined at the Rule 12 pleadings stage owing to the general factual complexity; As SCOTUS ruled *Babbitt v. Sweet Home* the "take" inquiry is a fact-dependent one –

> "In the elaboration and enforcement of the ESA, the Secretary and all persons who must comply with the law will confront difficult questions of proximity and degree; for, as all recognize, the Act encompasses a vast range of economic and social enterprises and endeavors. These questions must be addressed in the usual course of the law, through case-by-case resolution and adjudication" **FN17**

---

[17] *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 US 687, 115 SCT 2407 (1995).

b.     *I am successfully claiming that VSL activity in Right Whale Critical Habitat has resulted in incidental prohibited takings of endangered whales in the past and will routinely continue to do so in the future. As such said VSL operations itself constitute a per se prohibited taking of ESA Listed Species of whales.*

An entire activity concurrently conducted by even hundreds of actors constitute in its own right a per se prohibited activity pursuant to ESA § 9 taking prohibitions. If the actors engage in a coordinated effort under the same "rules of the road" for everyone it in itself becomes an ongoing prohibited ESA § 9 prohibited taking. Every actor then engages in ESA prohibited conduct simply from conducting the said activity regardless if its individual actions actually physically interact in any waly with a member of an ESA Listed Species. **FN18**

The ESA is a "strict liability statute." No intent or negligent conduct is needed for an actor/activity to be become subject to an injunction to stop it from continuing its ESA § 9 take prohibitions. The ESA taking prohibitions prevents any possible physical harm to be inflicted on any member of an ESA Listed Species. Its tool in prospective injunctive relief. It does not punish for past actions it just ruthlessly prevents future takings. Massport's support of VSL activity that routinely takes ESA Listed Species of whales subjects it to being ruthlessly enjoined to from supporting VLS activity in the future.

The Congress by adopting 16 USC § 1540(g) conveyed on every member of the Public the legal authority to prosecute offenders of ESA § 9 taking prohibitions by petitioning courts to enjoin any activity/person that is incidentally taking ESA Listed Species. This prosecutorial "tool" and its use have been the most successful provision of the ESA in protecting endangered wildlife. Its resulted in the Congress adding another provision to the ESA **FN19** No federal court has decided to explain the Congress' intent on adopting the "Citizen attorney general" provision of the ESA. But the court in *US v. Plymouth* ( FN14) did for the DOJ version, "The ESA specifically authorizes the Attorney General, acting on behalf of the United States, to "seek to enjoin any person who is alleged to be in violation of any provision of this chapter or regulation issued under authority thereof. " Citing 16 USC 6 1540(e)(6). So let's rephrase it for the Public's enforcement: "The ESA specifically authorizes the any

---

[18] *American Bald Eagle v. Bhatti*, 9 F.3d 163 (1st Cir. 1993)

[19] See 16 USC 6 1540(e)(6): "The Attorney General of the United States may seek to enjoin any person who is alleged to be in violation of any provision of this chapter or regulation issued under authority thereof."

member of the Public, acting on behalf of the United States, to seek to enjoin any person who is alleged to be in violation of any provision of this chapter or regulation issued under authority thereof."

I gain Article III standing based on Congress' assignment to me of prosecutorial authority under the ESA to enforce its ESA § 9 take prohibitions by seeking an injunction in a court of law to stop them. I have Article III standing to enjoin Massport. Case closed.

The DOJ subsequently prosecuted the Town of Plymouth MA for "allowing" recreational 4-wheel drive vehicles onto its beaches. **FN20** These beaches had a resident population of Piping Plover, an ESA Listed Species. The "individuals" having fun with their RVs would routinely run over a bird, a nest full of eggs, or a wandering fledgling. There were no rules by the town to make the RV drivers more likely to run over a Piping Plover that they would out of shear random chance. The town of Plymouth just let the RV drivers on their property. The town had no authority to impose speed limits or issue specials permits to allow only selected people on the beach. To the town, the beach is just an extended parking lot. No more and no less.

Judge Saris explained how an ESA § 9 taking prohibition occurs —

"Proof of a taking requires a showing "that the alleged activity has actually harmed the species or if continued will actually, as opposed to potentially, cause harm to the species." *American Bald Eagle v. Bhatti*, 9 F.3d 163, 166 (1st Cir.1993) (citing cases); see also Strahan, 127 F.3d at 162. A movant can make a showing of actual harm by proving that significant modification or damage to the habitat of an endangered or threatened species is likely to occur so as to injure that species."

The Plymouth court ruled that the town violated the ESA § Section 9 take prohibitions as the proximate cause of the incidental taking of Piping Plover by the RVs running around a Public beach. By Massport authorizing VLS to dock at its facilities it is also "soliciting\" them to enter and cross Massachusetts Bay that they would have never done otherwise. Massport is the proximate cause of VLS striking and killing of whales in Massachusetts Bay.

Additionally Massport is the proximate cause of VLS exposing the Right Whale Critical Habitat to vessel noise and chemical pollution that diminish the viability of Right Whales to feed, thrive and car for their young. This adverse impact result in early deaths for these whales and the inability to feed their young and give birth. In short, this pollution is an ESA 9 prohibited taking by "harm."

---

[20] *US v. Town of Plymouth*, 6 F.Supp.2d 81 (D. Mass 1998).

**29 December 2022 M. A. X. Reply Brief Appeal No. 22-1261**                                    17

My colorable claims satisfied at the FRCP Rule 12 stage. Clearly a factual issue at the start was the degree of the business relationship between Massport and the VLS and the degree of threat to whales that VLS was threatening. Both of these claims are legitimately surviving FRCP Rule 12 challenge and need to be fleshed out in discovery for the court to be able to make a fair determination.

Courts have routinely enjoined lawful activities that are causing prohibited takings of ESA Listed Species. In one railroad was ESA9 prosecuted for its trains running over Grizzly Bears that were on its track. **FN21** In another one a state agency was ESA9 prosecuted for releasing goats that ate the habitat essential to an ESA Listed Species of bird. **FN22** In still another one the EPA was ESA9 prosecuted for the incidental killing of ESA Listed Species of Black-Footed Ferret. **FN23**

The persistent theme in these cited cases is that the activities/actors are enjoined in an ESA § 9 prohibited taking prosecution because doing so is the quickest and easiest way to stop the prohibited taking of an ESA Listed Species. The activity is presumed to be other lawful. The reason its enjoined is to just stop a taking. The actor/activity does not need to be negligent or intending to enact the prohibited.

The key question is, "What actor can be enjoined that will stop VLS from running over Right Whales in Massachusetts?" It has one answer. Enjoin Massport from allowing VLS to dock at its port facilities for at least the months starting in January – May in any given year.

c.       *I got Article III Standing and I Never Claimed Massport Could Regulate Shio Traffic.*

At the Rule 12 stage I do not have to prove standing. My ESA claims against Massport only have to clearly state that my requested injunctive relief against the Appellee will stop the killing of whales by VLS  (redressability) by stopping Massport from soliciting the VLS to  cross Massachusetts Bay (Traceability).

My pleadings claim that  —

1.     VLS ships transit Massachusetts Bay and in Right Whale Critical Habitat back and forth within a single narrow shipping channel and at about the same speed as every other VLS.

2.     VLS strike whales within the confines of the established ship channel for leaving Boston Harbor or the one for entering the harbor.

---

[21] *National Wildlife Federation v. Burlington Northern Railroad*, 23 F.3d 1508 (9th  Cir. 1994)

[22] *Palila v. Hawaii Department of Land and Natural Resources*,  852 F.2d 1106 (9th Cir. 1988)

[23] *Defenders of Wildlife v. E.P.A.*, 882 F.2d 1294 (8th Cir. 1989)

3.  All the transiting VLS ships are owned by companies having a contractual relationship with Massport and are its formal and long-term business partners.

4.  Massport "solicited" its contracts with VLS operators and therefore solicited their VLS ships into Massachusetts Bay and these ships resulting incidental striking of ESA Listed Species of whales which constitutes of 16 USC § 1538(g) prohibited "solicitation" of a prohibited incidental taking under the ESA take prohibitions.

5.  *None of these VLS ships would transit Massachusetts Bay if they could not dock at Massport since no other port facility in the entirety of the Gulf of Maine is large enough to accommodate them.*

Therefore based on the above uncontestable allegations of facts in my pleadings, there is no question that my injuries are redressable and are directly traceable to Massport's port operations. Without Massport's port facilities no VLS would come into Massachusetts Bay waters. If the underlying court granted my permanent injunction and enjoined Massport for allowing any VLS ship to dock at its port facilities, this alone would shut down ALL VLS traffic in the entirety of the Massachusetts Bay and Right Whale Critical Habitat in the Gulf of Maine.

d.  *There is no applicable collateral estoppel to stop the underlying court from adjudicating my ESA claims against Massport. The 2008 lawsuit was dismissed without prejudice for lack of Article III standing. There is no statute or legal authority cited by the underlying court that stop me \from bringing whale killing Massport to justice in 2022.*

Tauro's failure to see "traceability" was entirely supplied within a single paragraph. It relied on dictum in an unpublished Court decision that Tauro read out of context —

> "Under the second prong, Plaintiff must also show that the injury—the killing or maiming of whales—is "fairly traceable" to the Defendant, and not the independent action of a third party not before this court. In a similar case involving the same Plaintiff, the First Circuit declined to hold the Coast Guard "liable for takings by non-Coast Guard vessels that [the Coast Guard] permits to operate." The First Circuit determined that a "vessel owner or operator is an independent actor who is, himself, responsible for complying with environmental and other laws."

Tauro became obsessed with claiming without cause that I was trying to get an order from him to require Massport order ships to travel at a certain speed. I only asked for an injunction to stop Massport from allowing any VLS to dock if it could not prove it traveled in a whale safe manner. More importantly, I only offered that to seem reasonable. In reality I wanted the court to just shut down Massport and not allow it to let any VLS to dock at its port facilities ever again.

**29 December 2022 M. A. X. Reply Brief Appeal No. 22-1261**                                    19

His obsession with "regulating speed" apparently led him to *Linnon* for one reason, that the that underlying court found that issuing of Certificates of Documentation was "ministerial" and the statute that requires vessels to obtain a COD does not allow the USCG to regulate any vessel activity pursuant to handing out the COD. The issuing of the COD is non-discretionary so under ESA § 7 there is no basis for conducting any kind of consultation under that section and there is no basis to impose any special operational conditions in issuing a COD.

Under the above context the Court in its unpublish ruling not that vessels were independent of USCG oversight in regard to vessels getting a COD. That it. This ruling had nothing to do with the issues involving my ESA prosecution of Massport.  Obviously Tauro just did not want to issue any order enjoining commerce at Massport so he leaped to grab any useful set of words from First Circuit rulings to just dismiss my 2008 lawsuit.

## CONCLUSION AND PRAYER FOR RELIEF

I am asking the Court to vacate the underlying court's order of dismissal and to remand the case back to the trial court for further proceedings to discovery and summary judgment.

BY

/s/ Richard Maximus Strahan

_____

Richard Maximus Strahan
a/k/a Max Against Xtinction
Chief Science Officer
Whale Safe USA
One Washington Street, #3112
Dover NH 03820
esistoo@yahoo.com

I certify that a copy of this brief and appendix was served on the shysters of the Appellee pursuant to the ECF filing system.